DREW, J.
b James Michael Doyle was convicted at jury trial of armed robbery (La. R.S. 14:64). He appeals his conviction because of the insufficiency of the evidence. He also appeals the excessiveness of his 22-year sentence at hard labor without benefit of parole, probation, or suspension of sentence. We affirm.
FACTS
On September 29, 2006, at approximately 5:00 a.m., Jimmie Johnson was at home in Keithville, watching TV when he heard a knock.[1] He recognized Doyle through a window. Johnson inquired as to why Doyle was there, and Doyle responded *866 that he was looking for his sister, Jennifer. After Johnson stated he did not know Jennifer’s whereabouts, Doyle pushed him back inside the home onto a couch. The elderly Johnson was too weak to resist.
Doyle straddled Johnson on the couch, pulled a knife and demanded money, becoming angry when Johnson responded that he had none. Doyle became angry, hitting the old man with his fists and with a knife. Johnson grabbed the knife, resulting in a gash between his thumb and finger.
After being beaten and cut, Johnson asked Doyle to wait while he looked to see if he had any money. He found some $1 bills in his pocket and gave them to Doyle. Doyle then left. Johnson immediately got a gun and went to the door looking for Doyle, but he did not see him. Johnson put his gun away and drove to the Caddo Parish Sheriffs Office Substation.
| ?Once he arrived at the substation, Johnson reported the crime, identifying the perpetrator as Doyle, who lived with his sister Jennifer in Keithville. Johnson knew Doyle as “Jimmy,” but could not then remember the robber’s last name, though he would later recall it. Deputies at the substation recognized the description as possibly being Doyle. The deputies took photographs of Johnson’s injuries, then took him to the hospital, where he was treated and released.
Several days later, Johnson viewed a photo lineup, at which time he immediately identified Doyle as his assailant. The defendant was later arrested and subsequently charged with armed robbery and attempted first degree murder. Later, an amended bill of information charging the defendant with armed robbery was filed. The defendant was convicted and sentenced as recited above.
DISCUSSION

Sufficiency

The standard of appellate review for a sufficiency of evidence claim is well settled.[2]
*867 |sTo convict a person of this crime, the state must prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Jeselink, 35,189 (La.App. 2d Cir.10/31/01), 799 So.2d 684. A dangerous weapon is any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3).
The victim, 80-year-old Jimmie Johnson, testified that:
• he had known the defendant for three or four years;
• the defendant[3] had visited Johnson’s home a few times;
• the defendant’s sister, Jennifer Doyle, was his girlfriend;
• in the past he had given Jennifer money in exchange for sex;
• he was robbed and injured as described above;
• he could not recall how many times the defendant hit him;
• he was sore on his left side after the incident;
• when the defendant left, he said something about four dollars;
• his telephone had been cut or broken;
• he drove himself to the police station to report the crime;
|4* at the substation, he identified Doyle by his first name;
• after his discharge from the hospital, he went to his ex-wife’s house;
• exhibits Sl-10 reflected his injuries 45 minutes after the crime;
• he picked Doyle out of a photo lineup a few days after the robbery;
• exhibits S14-16 reflected his injuries a few days after the incident; and
• the defendant was the person who robbed and beat him.
Deputy Kenneth Davis of the Caddo Parish Sheriffs Office testified that:
• he was patrolling on September 29, 2006, when he received a call to report to the south substation to take a report on a robbery;
• upon arrival, he saw blood covering Johnson’s head, hands, and face;
• the victim told him he had been going from his truck into his house when Doyle approached him with a knife demanding money;
• the victim gave $6 to Doyle, who then beat him;
• the victim described his injuries and the sequence of events;
• Johnson gave him the first name of the suspect, a physical description of him, and stated that he lived on Barron Ridge Road with his sister, Jennifer;
• photographs were taken of Johnson’s injuries; and
• Johnson was coherent and certain of the robber’s identity.
On cross-examination, Deputy Davis recalled the inconsistency of Johnson telling him that he was leaving his truck and heading into his house when he was attacked. He testified that no crime scene evidence was found outside the house, and no weapon was ever found.
*868 Deputy Jermaine Kelly of the Caddo Parish Sheriffs Office testified that:
Is* he participated in the investigation of the robbery by taking photos of the victim’s injuries and of the victim’s house;
• he identified exhibits S12 and 13 as pictures of the front of Johnson’s home;
• he did not enter the residence; and
• he could not locate an actual crime scene outside the house.
Detective Jason Morgan testified that:
• he was assigned to investigate the case a few days after the incident;
• he had worked in the area for ten years and the victim described the robber;
• because of this, he believed the perpetrator might be the defendant;
• he prepared a photo lineup, which he displayed to Johnson;
• defendant’s description fit that of the alleged perpetrator;
• without any hesitation, Johnson picked the defendant from the lineup; and
• he obtained an arrest warrant pursuant to which the defendant was arrested.
After the conclusion of Detective Morgan’s testimony, the state rested, at which time Doyle chose to exercise his right to remain silent and put on no evidence.
This record contains ample evidence to support this conviction. Through the victim’s testimony, all essential elements of the charged offense were proven. If the jury believed the victim, the case of armed robbery was proven.
We are puzzled by defendant’s argument that the state failed to establish these elements by failing to prove that something of value was taken. Johnson’s testimony that the defendant demanded and forcibly took Rmoney from the victim negates any argument that there was not a taking of something of value. While the value of the dollar has declined recently, it is still worth something.
The defendant also argues that the identity of the robber was not proven. He cites as support for this argument the victim’s shifting version of the facts. We reject this argument also. In the incident, the elderly victim had been beaten, cut, and robbed by a white male whom he knew as “Jimmy.” The victim was unable to recall Jimmy’s last name at the time of the initial report, but he did give further identifying details about the perpetrator. Johnson knew Doyle by his previous association with him as Doyle had visited his home and because Johnson had a “relationship” with Doyle’s sister. Johnson provided valid information that Doyle lived with his sister, Jennifer, in Keithville on Barron Road. Further, Johnson quickly identified the defendant in the photographic lineup.
The victim’s varying accounts of whether the crime took place within his home or outside near his truck were effectively presented to the jury by the defendant’s trial counsel. The fact that there was an inconsistency was highlighted through cross-examination of the witnesses. The discrepancy tends to go to the weight, and not the sufficiency, of the evidence. The victim’s testimony does not conflict with the physical evidence presented in the case; thus, the trier of fact was free to make determinations regarding the credibility of the witnesses’ testimony. The trier of fact made a rational credibility determination to accept the testimony of the victim, and we will not second-guess that decision.
| rjExcessiveness
The defendant argues that the trial court gave improper consideration to prior *869 criminal charges in determining his sentence and also failed to consider the effect of the incarceration on his family. The defendant also alleges the trial court failed to adequately consider his medical condition.
Our law on review of sentencing is well settled.[4]
| ^During the sentencing hearing, Doyle’s mother testified that:
• her son had been living with her in Keithville prior to his incarceration;
• he was a hard worker who earned “very good money” to help his family;
• prior to his father’s death in 2000, he contributed material goods to the household and helped after his father developed cancer;
• her son had a good Relationship with and provided for his two children;
• he had some type of seizure disorder for which he was taking medication;
• he was bipolar and was taking medication for this mental disorder;
• a lengthy prison sentence would have a tremendous impact on their family because he provided a lot of support to the family;
*870 • he possessed a good sense of humor and was helpful to his neighbors;
• he had a good heart and, but for the alcohol and drugs as well as his bipolar • and menta?' conditions, he would not have been in trouble; and
• she received numerous letters from the defendant while he was incarcerated indicating he turned his life over to God, that his addictions had been removed from him by God, and that his life had been saved.
Byron Reeves, a Mend of the defendant, testified that:
• he had known the defendant for over 30 years;
• Doyle was a hard worker whose troubles were alcohol-related;
• Doyle needed treatment for his addiction during his incarceration;
• he found out about Doyle’s problems about two years before this incident.
At sentencing, the trial court noted that:
• it considered the sentencing factors provided in La. C. Cr. P. art. 894.1;
!;,• it considered the presentence investigation report, which reflected a long criminal history, with prior felony convictions for robbery and burglary;
• the defendant had a number of dismissals for prior charges as well as some battery offenses for which details could not be obtained;
• this robbery was a violent crime, committed against an elderly victim; and
• a sentence of 22 years without benefits was appropriate.
We find that the trial court:
• considered all appropriate factors in determining the defendant’s sentence;
• was aware of the defendant’s past and current medical conditions; and
• knew that a lengthy incarceration would impose a hardship on his family.
The trial judge was not required to give any particular weight to the factors suggested by the defendant, and it is within the trial court’s discretion to consider all prior criminal activity even if the charges were eventually dismissed without prosecution. The defendant’s alleged multiple disabilities did not prevent him from committing the armed robbery. The fact that defendant’s prior offenses occurred quite some time ago does not mandate a lesser sentence. See State v. Jones, 31,569 (La. App. 2d Cir.12/9/98), 724 So.2d 810.
We find that a sentence of 22 years at hard labor without benefits is not constitutionally excessive. This repeat offender with prior convictions for armed robbery and burglary received a lower range sentence of the possible 10 to 99 years.
| mThe defendant has numerous arrests dating back to 1982. Many of his arrests have been for violent crimes against persons. Prior to this arrest, another unrelated charge of armed robbery against the defendant had been dismissed.
The defendant’s sentence is not grossly out of proportion to the seriousness of the offense. It is not a needless infliction of pain and suffering. The sentence is within the statutory limits and clearly on the lower end of the sentencing spectrum. Considering the violent nature of this armed robbery against an elderly victim who received multiple injuries, this sentence does not shock the sense of justice.
DECREE
The defendant’s conviction and sentence are AFFIRMED.

. Johnson, age 80, also presented another version of his location when the crime began.

. The standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, U.S. cert. denied.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,-981 (La.App. 2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App. 2d Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court *867 may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 1999-0023 (La.1/26/00), 775 So.2d 1022, U.S. cert. denied.

. In court, Johnson identified the defendant as his assailant.

. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir.1/28/04), 865 So.2d 284, writs denied, 2004-0834 (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351; State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, 2000-1467 (La.2/2/01), 783 So.2d 385.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Russell, 40,526 (La.App. 2d Cir. 1/27/05), 920 So.2d 866, writ denied, 2006-0478 (La.9/29/06), 937 So.2d 851; State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Estes, 42,093 (La.App. 2d Cir.5/9/07), 956 So.2d 779.
Second, a sentence violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La. 1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App. 2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.