MOORE, J.
|TThe defendant, Don L. Blanche, was convicted of obstruction of justice and sentenced to five years’ imprisonment at hard labor to be served consecutive with the sentence imposed for defendant’s previous attempted .manslaughter conviction and any other sentences the defendant is obli *1191 gated to serve. The defendant now appeals. For following reasons, we affirm.
FACTS
The defendant was charged by bill of information with one count of possession of phencyclidine (“PCP”), a Schedule I controlled dangerous substance and one count of obstruction of justice allegedly committed on May 30, 2009. The matter came on for trial before a six-person jury on June 29, 2010, where the following facts were established.
On May 30, 2009, the defendant was stopped by Officer Thomas Burlow of the Monroe Police Department in the 3800 block of Owl Street in Monroe, Louisiana. The vehicle, driven by Chesire Powell, failed to come to a complete stop at a stop sign. Officer Burlow testified that in addition to Powell, he recalled two other occupants, one sitting in the front passenger seat and one in the rear compartment. Assisting Officer Burlow during the stop as backup was Officer Michael Freeman who approached the vehicle from the rear passenger side.
As he approached, Freeman could see a “More” cigarette “partially wrapped with a zigzag” sitting in the lap of the rear passenger, whom Freeman subsequently identified as the defendant. Knowing that More cigarettes are commonly used for dipping in and smoking PCP, Freeman asked the defendant to exit the vehicle. As the defendant started to get out, | ^Freeman observed the defendant grab the More cigarette from his lap and throw it onto the front seat. Freeman found the cigarette on the floorboard of the front passenger seat and retrieved it. The zigzag wrapper appeared to be wet and the cigarette had an odor which Freeman associated with PCP. Freeman then placed the defendant under arrest.
The cigarette was given to Paul Knight, a detective with the Metro Narcotics Unit of the Ouachita Parish Sheriffs Office who had been called to the scene. Knight testified that the officers on the scene provided him two cigarettes, one a partially burned More cigarette and the other a hand-rolled cigarette, both of which he sealed in an evidence envelope and secured in an evidence locker until he transferred them to the Northeast Louisiana Crime Lab. At the crime lab, the evidence was tested by Susan Foley, a forensic chemist, who determined the evidence contained phencycli-dine or PCP.
The defendant testified that the vehicle had four occupants, including a second passenger in the rear compartment. He stated that the vehicle came to a stop “about a few whatever inches or miles or whatever” after the police activated their lights. When the officer came up to his window and shined a flashlight on his lap, he first noticed the More cigarette sitting there. He said the driver threw the cigarette into his lap while he was looking towards the rear at the police unit which was pulling them over. The defendant testified that he brushed the cigarette out of his lap causing it to land in the front passenger compartment. Explaining how the act of brushing the cigarette caused it to fly into the front passenger compartment, the ^defendant asserted that the driver was extremely overweight and had his seat reclined all the way back.
The defendant testified that, after exiting the vehicle, he asked the officer to smell his hands, but the officer refused. Asked why he made that request, defendant indicated that his hands would have smelled of PCP if he had been handling the cigarette. Asked how he knew the cigarette was - laced with PCP, defendant gave two differing explanations: first he asserted that the officer had stated as *1192 much but subsequently -stated that he had been able to smell the PCP after the officer retrieved the cigarette from the front passenger compartment.
Officer Freeman returned to the stand on rebuttal and was asked whether what he observed the defendant do with the cigarette was a “brushing off motion.” Freeman answered in the negative and when asked to again describe what he observed he stated:
Mr. Blanche was sitting straight up and I asked him to exit the vehicle. I didn’t say anything about the cigarette sitting on him because I didn’t want to alarm him. He leaned forward as he was stepping out, grabbed it, threw it in the front as he stepped out of the vehicle.
Freeman stated that the defendant was then put on the ground, placed in handcuffs and secured in Officer Burlaw’s patrol unit. It was only then that the vehicle was searched. Freeman denied that the cigarette was ever shown to or handled around the defendant.
The jury returned a verdict of not guilty on the charge of possession of a Schedule I CDS and a verdict of guilty on the charge of obstruction of justice. The court ordered a presentence investigation and sentencing was ^scheduled for May 9, 2011.
During the sentencing hearing, the trial court noted the defendant’s social and educational history reflected in the PSI, but focused its attention primarily on the defendant’s lengthy criminal background. The court detailed this history which, excluding the conduct that formed the basis of the instant conviction, included arrests in 1993 for second degree assault, in 1995 for misdemeanor carrying of a weapon without a permit and fleeing from an officer, in 1997 for attempted second degree murder, in 1998 for possession of cocaine, in 2003 for armed robbery, in 2006 for attempted second degree murder and possession of a firearm by a convicted felon, and in 2009 for possession of PCP, the last of which occurred while the instant charges were pending. These arrests resulted in convictions for misdemeanor carrying of a weapon without a permit, possession of cocaine, misdemeanor theft of goods, attempted manslaughter and possession of a firearm by a convicted felon. Defendant’s 1997 arrest for attempted second degree murder and his 2010 conviction for attempted manslaughter both involved victims who were shot by the defendant. The court also noted that many of the defendant’s arrests for new criminal conduct occurred while he was on probation from a prior conviction.
The court acknowledged that maximum sentences should be reserved for the worst offenders. Noting, however, that the defendant’s 17-year pattern of criminal behavior, the increasing severity of the crimes committed, the leniency previously afforded defendant by prosecutors dismissing serious charges and the defendant’s prior repeated failure to ^satisfactorily complete prior probationary periods, the court concluded the defendant qualified as the type of offender for whom maximum sentences are reserved. The court then sentenced the defendant to five years at hard labor to be served consecutive to the defendant’s sentences imposed for the defendant’s convictions for attempted manslaughter and possession of a firearm by a convicted felon. A motion to reconsider sentence arguing only bare excessiveness was filed on May 11, 2011, and denied at a hearing conducted on May 26, 2011. The instant appeal-followed.
DISCUSSION
By his first assignment of error, the defendant alleges that the evidence presented at trial was insufficient to sustain *1193 the conviction for obstruction of justice. Specifically, he argues that the state failed to offer proof of the defendant’s specific intent to distort the results of a criminal investigation. He contends that the jury “clearly believed” his testimony that he was unaware that the cigarette was thrown on his lap and, accordingly, his act of brushing the unidentified item out of his lap was insufficient to prove intent to interfere with a police investigation.
The state argues that the officer’s testimony as to the defendant’s actions was sufficient proof that the defendant knowingly possessed the cigarette and attempted to conceal it from the officers when he was asked to step out of the vehicle.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential | Belements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2 Cir. 1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App. 2 Cir. 5/9/07), 956 So.2d 758, twit denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622, units denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App. 2 Cir. 2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed *1194 criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Davies, 35,783 (La.App. 2 Cir. 4/05/02), 813 So.2d 1262, writ denied, 2002-1564 (La.5/9/03), 843 So.2d 389, citing La. R.S. 14:10(1); State v. Ellis, 28,282 (La.App. 2 Cir. 6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.2/21/97), 688 So.2d 521.
| ^Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1); State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 583, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377. See also State v. Allen, 41,-548 (La.App. 2 Cir. 11/15/06), 942 So.2d 1244, writ denied, 07-0530 (La.12/07/07), 969 So.2d 619. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Hill, supra. In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Hui-zar, supra.
Defendant was charged under La. R.S. 14:130.1(A)(1) which defines obstruction of justice as follows:
A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
j9(b) At the location of storage, transfer, or place of review of any such evidence.
Application of law to facts:
Presumably, the defendant’s argument that the jury clearly believed his testimony about how the cigarette ended up in his lap stems from the fact that he was found not guilty on the possession charge. While this conclusion is one plausible explanation for the jury’s verdict, it is not the one to be drawn when viewing the evidence in a light most favorable to the prosecution. The “not guilty” verdict could just as likely reflect the jury’s belief that the cigarette did not belong to the defendant but that he had placed it in his lap to help cover for the driver, the person most likely to interact with officers during a traffic stop.
Furthermore, this scenario is the only logical explanation for the defendant’s testimony that it was the driver who threw the cigarette in his lap. Defendant could not have been aware both that the driver threw the cigarette in his lap and unaware that it was in his lap until illuminated by the officer.
The jury’s verdict most likely reflects their belief that the cigarette was not his but that he was aiding others to conceal it from officers. Given the officer’s testimo *1195 ny regarding the defendant’s conduct and the defendant’s own testimony regarding the source of the POP laced cigarette, a rational trier of fact could reasonably have concluded beyond a reasonable doubt that the defendant was attempting to disrupt a criminal investigation.
| inThis assignment is therefore without merit.
By his second assignment of error, the defendant contends that the trial court imposed an excessive sentence considering the circumstances of the crime and the facts of the PSI. Specifically, he argues that the court erred in finding him to be a worst offender by failing to consider mitigating circumstances such as a childhood head injury which caused him to suffer cognitive difficulties, and the fact that his behavior did not cause or threaten any serious harm. Defendant also argues that the trial court’s consideration of prior arrests which did not result in prosecution or conviction was inappropriate under State v. Shields, 614 So.2d 1279 (La.App. 2 Cir. 1993) because there was no corroborating proof that he had committed the crimes.
- The state argues that the defendant’s criminal history, including his continued criminal activity while pending charges on other offenses, justifies the maximum sentence.
La. C. Cr. P. art. 881.1 applies to defendant’s sentence. This article precludes the defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. Since defendant’s motion for reconsideration merely alleged that the sentence is excessive, under State v. Mims, 619 So.2d 1059 (La.1993), he is “simply relegated to having the appellate court consider the bare claim of excessiveness.” This bare claim preserves only a claim of constitutional excessiveness, Mims, supra; State v. Lofton, 41,423 (La.App. 2 Cir. 9/27/06), 940 So.2d 702, unit denied, 2006-2952 (La.9/28/07), 964 So.2d 359.
_j_uA sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant’s prior convictions but may properly review all prior criminal activity. State v. Pamilton, 43,112 (La.App. 2 Cir. 3/19/08), 979 So.2d 648, unit denied, 2008-1381 (La.2/13/09), 999 So.2d 1145; State v. Boyte, 42,763 (La.App. 2 Cir. 12/19/07), 973 So.2d 900, writ denied, 2008-0175 (La.6/20/08), 983 So.2d 1272. The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Doyle, 43,438 (La.App. 2 Cir. 8/13/08), 989 So.2d 864.
In State v. Shields, supra, this court held the trial court’s reliance on prior arrests which did not result in prosecution or conviction was | ^inappropriate in the absence of a showing, by a preponderance of the evidence, of actual guilt of the offenses. *1196 This holding reflected the court’s interpretation of sentencing guidelines in effect at that time.
The jurisprudence in Louisiana prior to the implementation of the sentencing guidelines and after their repeal has been that in sentencing a defendant a court may consider prior arrests, and suspicions of criminal activity (hearsay) without actual proof the defendant committed other offenses. State v. Hatter, 338 So.2d 100 (La.1976); State v. Doyle, supra; State v. Estes, 42,093 (La.App. 2 Cir. 5/9/07), 956 So.2d 779; State v. Anderson, 30,060 (La. App. 2 Cir. 10/29/97), 702 So.2d 40.
The sentencing range applicable to the defendant’s conduct is provided for in La. R.S. 14:130.1(B)(3) which reads:
When the obstruction of justice involves any other criminal proceeding, the offender shall be fined not more than ten thousand dollars, imprisoned for not more than five years, with or without hard labor, or both.
In the instant case, the defendant alleged only bare excessiveness. Accordingly, he is precluded from complaining of inadequate compliance with La. C. Cr. P. art. 894.1 and is limited to review of the bare claim that the sentence is constitutionally excessive. State v. Mims, supra; State v. Crow, 42,173 (La.App. 2 Cir. 6/20/07), 960 So.2d 1173; State v. George, 39,772 (La.App. 2 Cir. 7/1/05), 908 So.2d 79.
Given the defendant’s extensive criminal history involving both drug related and violent offenses committed over a 17-year span, the defendant’s five-year sentence for the instant offense is not excessive. It is not grossly out of proportion to the seriousness of the offense and does not shock the 113sense of justice.
Furthermore, despite defendant’s failure to preserve the issues for appeal, his arguments regarding the trial court’s failure to consider mitigating circumstances and improper consideration of his criminal history are without merit. While the trial court’s oral reasons for sentencing imply it gave no weight to the lack of serious harm caused by defendant’s conduct, this factor does not mitigate the seriousness of the offense. Obstruction of justice under La. R.S. 14:130.1(A)(1), the defendant’s crime of conviction, is highly unlikely to threaten serious harm under any circumstances and that factor is reflected in the sentencing range prescribed for the offense. Regarding the defendant’s alleged cognitive difficulties resulting from a childhood fall, the evidence of same was non-existent. The defendant merely self-reported that he had problems in school because the injury “messed up his head.”
As indicated above, the trial court did not err in considering the defendant’s arrest history even in the absence of corroborating evidence of guilt. At no point during the sentencing procedure did defense counsel object to the judge’s reference to the presentence investigative report, nor was defendant denied an opportunity to prove the report erroneous.
This assignment is without merit.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.