STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-522

STATE OF LOUISIANA

VERSUS

CHRISTOPHER O. JAMES

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-2015-2085
HONORABLE ERROL DAVID DESHOTELS, JR., DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Phyllis M. Keaty, Judges.

AFFIRMED IN PART; REVERSED IN PART AND
REMANDED FOR RESENTENCING.

Paula Corley Marx
Louisiana Appellate Project
P. O. Box 80006
Lafayette, LA 70598-0006
Telephone: (337) 991-9757
COUNSEL FOR:
    Defendant/Appellant - Christopher O. James

Herbert Todd Nesom
District Attorney – 33rd Judicial District Court
Steven Sumbler
Assistant District Attorney – 33rd Judicial District Court
P. O. Box 839
Oberlin, LA 70655
Telephone: (337) 639-2641
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**THIBODEAUX, Chief Judge.**

Christopher James was arrested after he removed a bag from his pocket that contained five rocks of crack cocaine and threw it onto the front driver's seat. He did so as the arresting officer was conducting a pat-down subsequent to a traffic stop. He was charged with possession of cocaine with intent to distribute and obstruction of justice. A jury found him guilty of both charges. The trial judge sentenced him to serve concurrent terms of ten years for the drug charge and five years for obstruction of justice. Mr. James now appeals the convictions. For the reasons that follow, we affirm the conviction and sentence for obstruction of justice, but reverse the possession of cocaine with intent to distribute conviction and enter a judgment of guilty on the lesser charge of possession of cocaine. We remand the matter for resentencing on that conviction.

## I.

## <u>ISSUES</u>

We must decide:

1. whether there was sufficient evidence to support a guilty verdict of possession of cocaine with intent to distribute;

2. whether there is sufficient evidence to support a guilty verdict of obstruction of justice;

3. whether the trial court deprived Mr. James of his right to present a defense when it denied his motion for a continuance to conduct additional discovery;

4. whether the trial court erred in denying Mr. James's motion for a mistrial;

5. whether prospective jurors were struck because of their race (Black), in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), resulting in an all-white jury; and

6.     whether the obstruction of justice verdict form was defective.

## II.

## FACTS AND PROCEDURAL HISTORY

Mr. James was pulled over for driving without a valid driver's license. Before the traffic stop, Officer Brandon Johnson was alerted via a narcotics tip that Mr. James was selling crack cocaine. Officer Johnson attested that he previously cited Mr. James for operating a motor vehicle without a valid driver's license. Officer Johnson confirmed through the Louisiana traffic database that Mr. James still did not have a valid license and a traffic stop followed. Officer Johnson instructed Mr. James to get out of the car and to place his hands on the top of the car.

During the subsequent pat-down, Mr. James removed contents from his pocket and threw them through the car's open window. The contents included a small bag containing .77 grams of crack cocaine (five rocks). Mr. James's passenger, Kennon Richard, grabbed the bag and attempted to hide it between the armrest and the passenger's seat. Mr. James and Mr. Richard were both placed under arrest. The bag containing the crack cocaine was in plain view and was confiscated by Officer Johnson. Mr. James was charged by bill of information with possession of cocaine with intent to distribute and obstruction of justice.

On the morning of trial, the trial court heard and denied Mr. James's oral motion to continue the trial. During voir dire, the State exercised peremptory challenges to strike six minority persons from the jury, resulting in Mr. James being tried by an all-white jury. The jury found Mr. James guilty on both charges.

III.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find one error patent.

We note that Mr. James was advised incorrectly at sentencing that he had two years from that date to file an application for post-conviction relief. However, La.Code Crim.P. art. 930.8 provides that a defendant has two years after the conviction and sentence become final to seek post-conviction relief. Thus, the trial court is directed to correctly inform Mr. James of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of the opinion and to file written proof in the record that he received the notice. *State v. Baylor*, 08-141 (La.App. 3 Cir. 11/26/08), 998 So.2d 800, *writ denied*, 09-275 (La. 11/20/09), 25 So.3d 795.

IV.

**LAW AND DISCUSSION**

A. **Whether there was sufficient evidence to support a guilty verdict of possession of cocaine with intent to distribute.**

Mr. James first argues that there is insufficient evidence to support a guilty verdict of possession of cocaine with the intent to distribute.[1] He notes that: (1) the cocaine weighed less than a gram; (2) the rocks were all in one bag; and (3) he was arrested with cigarettes, a lighter, and only five dollars, all of which

---

[1]The knowing or intentional distribution of a Schedule II controlled dangerous substance (CDS) is a felony offense. La.R.S. 40:967. Crack cocaine is a Schedule II CDS. La.R.S. 40:964, Schedule II, (A)(4). "Distribution" includes the physical delivery or administration of a substance. La.R.S. 40:961(14).

3

indicate his intention to use but not distribute cocaine. In doing so, Mr. James admits that he possessed cocaine but that there is insufficient evidence to prove his intent to distribute the cocaine.

The State contends that his intention to distribute is inferred from the circumstances surrounding his arrest. The State posits that: (1) the cigarettes were not hand rolled, which would ordinarily be used to smoke crack cocaine; (2) the cocaine was packaged in a baggie, which indicated an intent to distribute because crack users typically receive their crack unbound; and (3) there was no evidence that Mr. James was a cocaine user.

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)).

The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847, 850 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

It is the factfinder's role to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring

4

the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve "'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. ___, ___, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville*, 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378.

The Louisiana Supreme Court has set a test for determining whether a defendant possessed an illegal substance with the intent to distribute. *State v. House*, 325 So.2d 222 (La.1975). We should consider whether: (1) Mr. James ever distributed or attempted to distribute the substance; (2) the substance was in a form typically associated with possession for distribution; (3) the amount created a presumption of the intent to distribute; (4) expert or other testimony showed the

5

amount was inconsistent with personal use; and (5) any paraphernalia associated with the intent to distribute was present. *Id.* The Court will address each factor in turn.

First, there is no evidence to suggest that Mr. James ever distributed or attempted to distribute the crack rocks. Mere possession of a substance is not evidence of the intent to distribute "unless the quantity is so large that no other inference is possible." *State v. Hearold*, 603 So.2d 731, 735-36 (La.1992). The crack here was found subsequent to a traffic stop and not during an instance that implies Mr. James was attempting to distribute.

Second, the crack cocaine was not packaged in a manner consistent with distribution. The five rocks were in one small plastic bag and not packaged individually. Officer Johnson testified that crack cocaine distributors package rocks "in a pill bottle in a plastic bag" so that the seller can take the bottle out of the bag and place the rock in the purchaser's hand. The five rocks Mr. James possessed were packaged together in one bag, not in a pill bottle placed in a bag. Even so, Officer Johnson considered the packaging consistent with distribution. The discrepancy in Officer Johnson's testimony does not establish that the rocks were packaged in a manner consistent with distribution. Given the rocks were neither individually packaged nor placed in a bottle in a plastic bag, this factor weighs in favor of possession of crack cocaine but not intent to distribute.

Third, the amount (.77 grams) does not create a presumption of intent to distribute. Jurisprudence reveals that possession of five rocks of cocaine suggests personal use, not an intent to distribute. For example, in *State v. Brooks*, 00-1123 (La.App. 3 Cir. 1/31/01), 779 So.2d 1055, *writs denied*, 01-865, 01-896 (La. 2/1/02), 808 So.2d 332 and 333, the defendant was charged with possession of

6

cocaine with the intent to distribute after police found a medicine bottle containing five rocks of cocaine in his pocket. A jury found him guilty of the lesser charge of possession, and this court affirmed the conviction. In *State v. Snavely*, 99-1223 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, *writ denied,* 00-1439 (La. 2/16/01), 785 So.2d 840, an officer testified that crack users generally purchase one to five rocks at a time for personal use.

Here, Mr. James possessed five rocks of crack cocaine. This amount is not sufficient to create a presumption of intent to distribute. *Compare State v. Davis*, 05-543 (La.App. 3 Cir. 12/30/05), 918 So.2d 1186, *writ denied,* 06-587 (La. 10/13/06), 939 So.2d 372 (holding that there was sufficient evidence to uphold a possession with intent to distribute conviction against a defendant who possessed eleven grams of crack cocaine), *with State v. Durgan*, 05-1642 (La.App. 3 Cir. 5/31/06), 931 So.2d 1182 (reversing a conviction for possession of cocaine with intent to distribute against a defendant who possessed .82 grams of crack cocaine).

Fourth, testimony did not establish that the amount was inconsistent with possession for personal use. On this factor, Officer Johnson offered shifting testimony. He stated that five rocks was "right in the middle" and that "it is more than your normal crack addict would have, but it is not out of the realm of possibility for a crack addict to smoke that much crack." Instead of establishing that five rocks are inconsistent with personal use, his testimony leads us to the opposite inference. Five rocks are indicative of possession by a crack user, not a distributor.

Fifth, no paraphernalia associated with distribution was present. He was not arrested with scales, baggies, individually wrapped rocks, weapons, or a large amount of money to suggest that he was distributing crack cocaine.

Accordingly, because the above factors weigh in favor of acquittal of possession with intent to distribute, we vacate that conviction. We enter a guilty verdict on the lesser charge of possession of crack cocaine and remand for resentencing on that conviction.

**B.      Whether there is sufficient evidence to support a guilty verdict of obstruction of justice.**

Mr. James contends that obstruction of justice requires the State to establish that he acted with specific intent to affect a criminal investigation. He argues that specific intent is lacking because he simply took the crack cocaine out of his pocket and placed it on the driver's seat, in plain view of the officer, and acknowledged that it was his. This action, he argues, did not affect the investigation because he did attempt to tamper or destroy the crack cocaine.

The State argues that specific intent can be inferred because Mr. James moved the crack cocaine from his pocket to the driver's seat as he was being patted-down and without permission from Officer Johnson to do so.

Obstruction of justice occurs when the offender tampers "with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding." La.R.S. 14:130.1(A)(1). "Tampering" includes "the intentional alteration, movement, removal, or addition of any object or substance" at the location of an incident subject to investigation. *Id.*; *see State v. Blanche*, 47,015 (La.App. 2 Cir. 4/11/12), 91 So.3d 1189 (holding that a defendant throwing a PCP-laced cigarette onto the seat as he exited the vehicle was sufficient to conclude that the defendant was attempting to disrupt a criminal investigation).

8

> [O]bstruction of justice is a specific-intent crime. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Therefore, specific intent need not be proven by fact but can be inferred from the circumstances and the actions of the defendant.

*State v. Vercher*, 14-1211, p. 11 (La.App. 3 Cir. 5/6/15), 162 So.3d 740, 747, *writ denied,* 15-1124 (La. 5/20/16), 191 So.3d 1065.

Here, as Officer Johnson conducted a pat-down, Mr. James grabbed his bag of cocaine rocks and threw it into the car, where his passenger attempted to hide it. He did not simply hand over the bag of cocaine to Officer Johnson. The jury could have reasonably found that Mr. James was trying to hide evidence of his drug possession and evade drug charges when he threw the bag into the car. The presence of the bag on Mr. James's person would have been clear evidence of his possession of it. Viewing the evidence in the light more favorable to the State, we conclude that a rational trier of fact could have concluded reasonably that Mr. James acted with specific intent to distort the investigation. Accordingly, we affirm the obstruction of justice conviction.

**C.** **Whether the trial court deprived Mr. James of his right to present a defense when it denied his motion for a continuance**.

On the day of trial, Mr. James moved orally to continue the trial so that his counsel could conduct discovery into his history of drug addiction to rebut the intent to distribute charge. He argues that after he changed counsel, his eventual trial counsel only had a little over a month to prepare for trial.

The State contends that Mr. James did not file a written motion for a continuance at least seven days prior to trial as required by La.Code Crim.P. art.

707. Further, unexpected circumstances did not exist for the trial court to permit an oral motion for a continuance. It also asserts that the case did not present a complicated factual basis or issues that required extensive discovery.

A trial court has great discretion whether to grant or deny a motion to continue trial. An appellate court will not disturb the trial court's decision absent a clear abuse of discretion. *State v. Gaskin*, 412 So.2d 1007 (La.1982); *State v. Balfa*, 485 So.2d 264 (La.App. 3 Cir. 1986).

Here, the record contains no indication that Mr. James's counsel made an effort to obtain medical records. Additionally, he has not identified any medical records or testimony to support his contention that he was a long-time crack addict. He told the trial judge he was involved in drug rehab in 2002, thirteen years prior to this offense. Although he wanted the continuance to obtain medical records, he testified that the only help he had sought "in the last year or two" was informal drug counseling with his pastor. We conclude that the trial court did not abuse its discretion by denying Mr. James's motion to continue.

**D.** **Whether the trial court erred in denying Mr. James's motion for a mistrial.**

Mr. James claims that the trial court erred by denying his motion for a mistrial when the State asked a potential juror, a law enforcement officer, about his prior interactions with the defendants. When asked whether he knew either of the defendants, the prospective juror responded, "I am not sure. I think one of them." Mr. James argues that this response violated his presumption of innocence because it suggested that he was a criminal. He argues that he was entitled to a mandatory mistrial under La.Code Crim.P. art. 770 or a discretionary mistrial pursuant to La.Code Crim.P. art. 775.

The State contends that the prosecutor's question was not intended to elicit inadmissible evidence and that the juror's response did not prejudice Mr. James because it did not reference other crimes committed by the defendants. Further, a mistrial was not warranted under La.Code Crim.P. arts. 770, 771, or 775 because the response did not result in substantial prejudice.

The trial court's decision to deny a motion for mistrial will not be disturbed absent an abuse of discretion. *State v. Juniors*, 05-649 (La.App. 3 Cir. 12/30/05), 918 So.2d 1137, *writ denied*, 06-267 (La. 9/15/06), 936 So.2d 1257, *cert. denied*, 549 U.S. 1226, 127 S.Ct. 1293 (2007) (citing *State v. Sloan*, 29,787, (La.App. 2 Cir. 9/24/97), 701 So.2d 995, *writ denied*, 97-2601 (La. 2/6/98), 709 So.2d 731).

Under La.Code Crim.P. art. 770, "[u]pon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to . . . [a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]" Additionally, under La.Code Crim.P. art. 775, "[a] mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial . . . ."

A comment that only arguably points to another crime, but does not unmistakably point to it, does not warrant a mandatory mistrial. *State v. Edwards*, 97-1797 (La. 7/2/99), 750 So.2d 893, *cert. denied*, 528 U.S. 1026, 120 S.Ct. 542 (1999). In *Edwards*, a detective testified he learned of the defendant's address "[t]hrough the probation officer." *Id.* at 906. The supreme court found the State's

line of questioning did not intend to elicit inadmissible evidence of the defendant's other crimes. Even if it did, however, the court found the reference did "not unambiguously point to another crime committed by the defendant." *Id.* at 907. Thus, a mandatory mistrial was not warranted.

Here, Mr. James was entitled to neither a mandatory nor a discretionary mistrial. Mr. James was not entitled to the mandatory mistrial provisions of La.Code Crim.P. art. 770 because the officer did not testify at trial; he was asked a question during voir dire. The State contends the question of whether the officer had "worked any of these cases dealing with any of the defendants" referred only to the current charges against the defendants. This is a reasonable possibility and an important inquiry with probative value, as a police officer who had been involved in the case being tried would not be an appropriate juror. The question asked did not refer to an offense besides the one being tried.

Further, the trial court did not abuse its discretion in denying a discretionary mistrial under La.Code Crim.P. art. 775. The trial judge was in the best position to assess the impact of the statement. Mr. James alleges no specific prejudice because of the potential juror's remark, which was vague and not a clear reference to another crime. Mr. James has not shown that the remark inflamed the jury or contributed to the guilty verdict, particularly where the evidence was sufficient to convict him of possession of cocaine and obstruction of justice. Accordingly, we affirm the trial court's decision to deny Mr. James's motion for a mistrial.

**E.** **Whether prospective jurors were struck on the basis of their race (Black), in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), resulting in an all-white jury.**

Mr. James contends that his equal protection guarantees outlined in *Batson v. Kentucky*, 476 U.S. 79 (1986) were violated. *Batson* makes it unconstitutional to use a peremptory challenge to exclude a prospective juror because of race. He complains that no race-neutral reasons existed to exclude five African-Americans (Emily Sapp, Zealon Solomon, Ammie Cole, Bridget Gold, and Jerome Sumbler) from serving, resulting in an all-white jury.

The State argues that it provided reasonable and specific race-neutral reasons to exclude each. Thus, Mr. James cannot establish that the State acted with discriminatory intent. We will address each prospective juror in turn.

When a *Batson* challenge is asserted, the proponent bears the burden of presenting a *prima facie* showing of purposeful discrimination in the selection of the jury. The burden then shifts to the opponent to show a non-discriminatory basis for its peremptory challenge. The trial court then determines whether the proponent has carried his burden of proving purposeful discrimination. *State v. Nelson*, 10-1724, 10-1726 (La. 3/13/12), 85 So.3d 21. Once the State provides race-neutral reasons for its peremptory strikes, the issue of whether the strikes constitute a *prima facie* pattern of discrimination becomes moot. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859 (1991); *State v. McCoy*, 14-1449 (La. 10/19/16), ___ So.3d ___.

In *State v. Tilley*, 99-569, pp. 4-5 (La. 7/6/00), 767 So.2d 6, 12-13, *cert. denied,* 532 U.S. 959, 121 S.Ct. 1488 (2001), the Louisiana Supreme Court set out criteria for evaluating the State's answer to whether the peremptory challenge was race-neutral:

Although the state's explanation must be based on more than an assumption or a hunch, *State v. Collier*, [553 So.2d 815 (La.1989)], to be facially valid, it need not be persuasive, or even plausible; thus unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *State v. Hobley*, [98-2460 (La. 12/15/99), 752 So.2d 771]; *Purkett* [*v. Elem,*] 514 U.S. [765] at 767, 115 S.Ct. [1769] at 1771.

Faced with a race-neutral explanation, the defendant then must prove to the trial court purposeful discrimination. *Id*. (Citing *Batson, supra*; *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). The proper inquiry in the final stage of the *Batson* analysis is whether the defendant's proof, when weighed against the prosecutor's proffered race-neutral reasons, is sufficient to persuade the trial court that such discriminatory intent is present. *Id*. (Citing *State v. Green*, 94-0887 (La.5/22/95), 655 So.2d 272, 290). Thus, the focus of the *Batson* inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. *Id*. The trial court should examine all of the available evidence in an effort to discern patterns of strikes and other statements or actions by the prosecutor during *voir dire* that support or reject a finding of discriminatory intent. *Id*.; *State v. Tyler*, 97-0338 (La.9/9/98), 723 So.2d 939, 942-43, *cert. denied*, *Tyler v. Louisiana*, 526 U.S. 1073, 119 S.Ct. 1472, 143 L.Ed.2d 556 (1999). Because the factual determination pertaining to intentional discrimination rests largely on credibility evaluations, the trial court's findings are entitled to great deference by the reviewing court. *Id*.; *State v. Snyder*, 98-1078 (La.4/14/99), 750 So.2d 832.

## 1. <u>Ammie Cole</u>

Ammie Cole worked with Kennon Richard's (the co-defendant) defense attorney as a teacher and thought he was "great." Additionally, Mr. James's attorney represented Ms. Cole's cousin as a defendant in a civil case. The

State struck Ms. Cole based on her history of actually working with Mr. Richard's attorney.

Mr. James objected to her removal. She was the only African-American left in the jury venire when she was struck. The trial court excused Ms. Cole.

We find that the State offered a sufficient race-neutral reason for striking Ms. Cole. If she thought Mr. Richard's attorney was a great teacher, based on her personal work experience with him, she may have presumptively found him to be a great attorney. This could have influenced her reception, processing, and interpretation of the evidence. Although no other African-American remained in the jury venire after Ms. Cole was excluded, we conclude that the available evidence shows she was not stricken because of race.

## 2. Bridget Gold

Bridget Gold told the trial court she knew Steven Sumbler, one of the State's attorneys, because they "grew up together" and "he was like family." She also knew Mr. James, who lived with his grandmother down the street from her, and Mr. Richard, although "not personally." Nevertheless, she believed she could listen to the evidence and make a fair and impartial decision. Additionally, Ms. Gold's brother had been in the hospital for the two weeks prior to trial awaiting a heart transplant, but she still felt she could perform her job as a juror.

Based on the record, it is unclear if Mr. James made a *Batson* objection. When defense counsel noted Ms. Gold was African-American, the State presented a race-neutral argument that she lived down the street from Mr. James, and knew Mr. Richard. The trial judge commented, "I don't know if that was a

*Batson* challenge or not. But the race-neutral, very sufficient race-neutral reason will stand."

The close relationship between her and Mr. Sumbler could easily create an appearance of impropriety if she served on the jury. We conclude that this negates the possibility of the State's discriminatory intent.

### 3. Emily Sapp (Equilla Sapp)

Equilla Sapp, referred to by Mr. James as "Emily Sapp," knew the State's counsel, Steven Sumbler, through their church. She was also his father's cousin and his mother's best friend. She taught Mr. Sumbler as a substitute teacher. She felt she could vote not guilty if he did not prove all elements beyond a reasonable doubt. Ms. Sapp was involved in a church ministry with a mandatory meeting in Mississippi that began on Wednesday of that week, just two days after her voir dire.

The State exercised a challenge to exclude Ms. Sapp based on her being a family friend of Mr. Sumbler. Counsel also noted Ms. Sapp would have to miss her required church meeting to serve on the jury. The trial court noted "there are plenty of race-neutral reasons that were given" and excused Ms. Sapp. Mr. James objected, commenting "every African American juror that comes up is getting peremptory, every last one of them. It is a pattern at this point."

The State had no discriminatory intent in striking Ms. Sapp. She, like Ms. Gold, was a very close family friend and also a member of Mr. Sumbler's family. Because of these relationships, we conclude that there were sufficient race-neutral reasons for striking her from the jury.

### 4. <u>Zealon Solomon</u>

Zealon Solomon was an eighth grade math teacher at Oakdale Middle School, a tennis coach at Oakdale High School, a small business owner, and a 2012 graduate of LSU Paul M. Hebert Law Center. He and Mr. Sumbler are cousins, and he went to school with the co-defendant, Mr. Richard. Additionally, Mr. Solomon's students had midterm examinations the week of trial. He felt he could balance school and the trial, but he thought his mind would be on his students and their preparation to a certain extent rather than on the trial. Mr. Solomon taught both children of the investigating officer, Brandon Johnson. Officer Johnson's son played tennis for Mr. Solomon.

Both defendants raised a *Batson* challenge to the State's peremptory exclusion of Mr. Solomon. As race-neutral reasons, the State argued Mr. Solomon and Mr. Sumbler were related, his focus was on his student's exams, and he had experience in the legal field. The trial court denied the challenge for cause but allowed a peremptory strike.

The familial relationship between Mr. Solomon and Mr. Sumbler alone was a sufficient race-neutral reason to strike him from the jury. Although Mr. James alleges a pattern of discriminatory intent, the trial court could have found instead a pattern of striking family members and close relationships to prevent the appearance of stacking the jury in favor of the State, a factor that supports denying the *Batson* challenge. We conclude that there were sufficient race-neutral reasons for striking Mr. Solomon.

17

### 5. Jerome Sumbler

Jerome Sumbler is Mr. Sumbler's uncle, and he knew both defendants. He stated that would not tend to vote guilty simply because his nephew was the State's attorney. Jerome Sumbler also played basketball and football with the uncle of one of the defendants, and they were lifelong friends. He understood his service as a juror could appear improper because of those relationships. The trial court excused him for cause. None of the attorneys stated an objection.

On appeal, Mr. James alleges that *Batson* also applies to challenges for cause. He cites no authority for this premise. While Mr. James claims the State showed a pattern of striking African-American jurors, the State more accurately showed a pattern of striking jurors who may lean toward the defense or whose service on the jury could appear to result in unfairness to either or both defendants. Mr. Sumbler was related to the State's counsel and was a lifelong friend of one of the defendants' uncle, both of which were adequate reasons to strike him for cause.

For the reasons stated, we hold that the trial court ruled correctly that the State provided sufficient race-neutral reasons to exercise a peremptory challenge for each juror.

### F. Whether the obstruction of justice verdict form was defective.

Last, Mr. James claims that the verdict form for the obstruction of justice charge was defective. He argues that the verdict form should have included

additional responsive verdicts, in particular those prescribed by La.R.S. 14:130.1(B)(3).[2]

The State argues that any objection to the verdict form must be made contemporaneously during trial. It notes that Mr. James did not request the additional, responsive verdicts during trial. Thus, he failed to preserve this issue for appeal.

Unless objected to contemporaneously, an irregularity or error in the charge to the jury may not be asserted on appeal. La.Code Crim.P. art. 841; *State v. Belgard*, 410 So.2d 720 (La.1982). For example, in *State v. Newton*, 42,743 (La.App. 2 Cir. 12/19/07), 973 So.2d 916, *writ denied,* 08-1147 (La. 1/16/09), 998 So.2d 90, the defendant alleged that the trial court erred in failing to list attempted obstruction of justice as a proper responsive verdict to the charge of obstruction of justice. The court discussed attempted obstruction of justice as a responsive verdict with the parties but never ruled on the issue. The defendant did not object to the charge presented to the jury or request an additional charge. The second circuit held the defendant failed to preserve the issue for appeal.

Similarly, at trial, Mr. James did not suggest the verdict form he now contends should have been submitted. Further, he did not object when the jury was charged or when the verdict form was submitted to the jury. The trial court reviewed the jury charge with all counsel. Based on Mr. James's request, the trial judge removed a reference to conviction of a prior offense and to discrediting testimony because of a prior inconsistent statement. Mr. James made no objection regarding the responsive verdicts, and the verdict sheet went to the jury without the

---

[2] This statute states, "[w]hen the obstruction of justice involves any other criminal proceeding, the offender shall be fined not more than ten thousand dollars, imprisoned for not more than five years, with or without hard labor, or both."

choices Mr. James now seeks on appeal. Accordingly, Mr. James failed to preserve this issue for appeal, and we need not consider it.

V.

## <u>CONCLUSION</u>

For the reasons stated, we affirm the conviction and sentence for obstruction of justice, but reverse the possession of cocaine with intent to distribute guilty verdict and enter a judgment of guilty on the lesser charge of possession of cocaine. We remand the matter for resentencing on that charge. We also direct the trial court to inform Mr. James of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Mr. James within ten days of the rendition of this opinion, and to file written proof into the record indicating that Mr. James received the notice.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR RESENTENCING.**