979 So.2d 648 (2008)
STATE of Louisiana, Appellee
v.
Rodney PAMILTON, Appellant.
No. 43,112-KA.
Court of Appeal of Louisiana, Second Circuit.
March 19, 2008.
*650 Peggy Sullivan, Louisiana Appellate Project, Monroe, for Appellant.
Paul J. Carmouche, District Attorney, Jason Brown, John Ford McWilliams, Jr., Assistant District Attorneys, for Appellee.
Before GASKINS, CARAWAY and MOORE, JJ.
GASKINS, J.
The defendant, Rodney Pamilton, was found guilty by a jury of second degree kidnapping and aggravated second degree battery. He was ordered to serve 40 years at hard labor, without benefit of parole, probation, or suspension of sentence on the second degree kidnapping conviction and 15 years at hard labor on the aggravated second degree battery conviction, with the sentences to run concurrently. The defendant appealed his convictions and sentences. For the following reasons, we affirm.

FACTS
On April 10, 2005, the defendant agreed to supply the victim, B.B.,[1] with crack cocaine in exchange for sex. This was not the first time they had met for this purpose. They went to an abandoned house in Shreveport to consummate the transaction. It is undisputed that B.B. voluntarily accompanied the defendant to the house with the intention of smoking crack and engaging in sexual activities.
In an upstairs bedroom, as they smoked the crack, B.B. performed oral sex on the defendant for approximately 60 minutes. The defendant was unable to achieve climax. *651 B.B. wanted to leave. After B.B. "made a run for it," an altercation ensued, during which both the defendant and B.B. fell down a flight of stairs. The defendant was upset and felt that B.B. had not fulfilled her part of the bargain.
At that point, the defendant flew into a rage and brutally beat B.B. The defendant testified that he struck B.B. only with his fists. B.B. testified that the defendant also struck her with a paint can and a glass liquor bottle. The defendant admitted swinging a paint can at B.B.'s head with enough force to kill, but claimed that he missed. A glass liquor bottle with what appeared to be a fresh blood smear was recovered from the crime scene. A dented, mostly-full paint can was also found at the crime scene. Neither the paint can nor the liquor bottle was tested by the crime lab for fingerprints or the presence of blood.
B.B. was severely injured as a result of the fall and beating. Nevertheless, B.B. testified that the defendant dragged her back up the stairs against her will, telling her that she was not going anywhere until she performed what she was supposed to perform. They eventually engaged in additional sexual activities, including vaginal sex. The parties agree that at some point during the night, the defendant was able to achieve climax.[2] Although she was not tied up or bound in any way during the night, B.B. testified that she did not feel free to leave since she tried to leave twice and was beaten both times. Then, the next morning, the defendant told her she could go. The defendant testified that B.B. remained at the house voluntarily.
The next morning, on April 11, 2005, B.B. left the house and went to a neighbor's house for help. The neighbor called for police and medical assistance. B.B. was taken to the LSU Medical Center and was examined by several doctors, including an OB/GYN who performed a rape examination. The evidence at trial revealed that B.B. had a lacerated liver, multiple spine fractures and facial trauma that required stitches; her eyes were blackened and swollen nearly shut. She was in intensive care for three days.
During the police investigation, the defendant was identified as a suspect and was apprehended. After being advised of his Miranda rights, the defendant admitted to police that he brutally beat B.B. when she tried to leave the house, but denied beating her with any objects such as the paint can or liquor bottle. The defendant admitted that he "whooped her ass," that "I swole her up," that there was "blood everywhere," and that he beat her so badly she looked "like an elephant woman" which "spoiled the mood." The defendant denied that he forced B.B. to remain at the house against her will. The defendant's statements were recorded and admitted into evidence at trial.
The defendant was initially charged by bill of information with forcible rape. Subsequently, a grand jury returned a two-count indictment charging the defendant with aggravated kidnapping and aggravated second degree battery. At the conclusion of the trial, the jury found the defendant guilty of the responsive verdict of second degree kidnapping, and guilty as charged of aggravated second degree battery. The defendant was sentenced to 40 years at hard labor without benefit of parole, probation, or suspension of sentence for second degree kidnapping, and to 15 years at hard labor for aggravated second degree battery. The sentences were ordered to run concurrently. The defendant's *652 motions for post verdict judgment of acquittal, new trial, and reconsideration of sentence were denied. The defendant appealed, claiming that there was insufficient evidence upon which to base his convictions for second degree kidnapping and aggravated second degree battery and that his sentences are excessive.

SUFFICIENCY OF THE EVIDENCE
The defendant argues that the evidence adduced at trial was insufficient to convict him of second degree kidnapping and aggravated second degree battery. The defendant argues that there was a lack of proof that the victim was imprisoned or forcibly secreted against her will. He also argues that the evidence was insufficient to prove beyond a reasonable doubt that the defendant used a dangerous weapon in committing the battery upon the victim. These arguments are without merit.

Legal Principles
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, XXXX-XXXX (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, XXXX-XXXX (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, XXXX-XXXX (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd, 40,480 (La.App. 2d Cir. 1/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/9/06), 941 So.2d 35; State v. Jones, 31,613 (La.App. 2d Cir.4/1/99), 733 So.2d 127, writ denied, XXXX-XXXX (La.10/1/99), 748 So.2d 434.

*653 Second Degree Kidnapping
Second degree kidnapping is defined in La. R.S. 14:44.1 as follows:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5);
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
The provisions of this statute apply when any one occurrence mentioned in Subsection B combines with any one or more occurrences enumerated in Subsection A. State v. White, 593 So.2d 882 (La.App. 2d Cir.1992).
In the present case, the bill of information charged that the defendant imprisoned and forcibly secreted B.B. Although the record establishes that B.B. initially accompanied the defendant to the abandoned house voluntarily, the record also reveals that at some point B.B. sought to leave, but she was forcibly constrained from doing the same. The defendant beat her with a dangerous weapon when she tried to leave. B.B. testified that the defendant told her: "Bitch, you're not going to leave here until you give me the satisfaction of what I want. If it takes me keeping you here all night, that's what I'll do." The defendant confined and detained B.B. by telling her that she had to stay and repeatedly beating her when she tried to leave.[3]
The forcible prevention of B.B.'s exit from the abandoned house, coupled with the subsequent physical and sexual abuse (including a battery by the defendant while armed with a dangerous weapon, discussed below), was sufficient to support the defendant's guilt. The jury did not err in finding the defendant guilty beyond a reasonable doubt of the responsive verdict of second degree kidnapping. The defendant's argument to the contrary is without merit.

Aggravated Second Degree Battery
Battery is defined, in pertinent part, in La. R.S. 14:33 as the intentional use of force or violence upon another. Aggravated second degree battery is a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily harm. La. R.S. 14:34.7. A dangerous weapon includes any gas, liquid, or other instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(A)(3).
*654 Whether a weapon is dangerous is a factual question for the jury to determine upon considering not only the character of the weapon, but by whom, upon whom, and in what manner it was used. State v. McClure, 34,880 (La.App. 2d Cir.8/22/01), 793 So.2d 454; State v. Taylor, 485 So.2d 117 (La.App. 2d Cir.1986). Louisiana jurisprudence reveals that numerous everyday items have been held to constitute a "dangerous weapon," in the manner used, including a stick, an ink pen, rum, a tennis shoe, and a metal pipe. State v. McClure, supra; State v. Johnson, 598 So.2d 1152 (La.App. 1st Cir.1992), writ denied, 600 So.2d 676 (La.1992); State v. Malhiot, 41,175 (La.App. 2d Cir.8/23/06), 938 So.2d 1158, writ denied, 2006-2352 (La.4/27/07), 955 So.2d 682; State v. Munoz, 575 So.2d 848 (La.App. 5th Cir.1991), writ denied, 577 So.2d 1009 (La.1991); State v. Tyner, 41,937 (La.App. 2d Cir.2/28/07), 953 So.2d 865.
It is undisputed that the defendant committed a battery upon B.B. and that he intentionally inflicted serious bodily harm. The defendant's sole challenge to the sufficiency of the evidence concerning the aggravated second degree battery charge centers on the purported conflicting testimony about whether a dangerous weapon was used to perpetrate the offense. The defendant argues that the victim's testimony was inconsistent and could not serve as support for the conviction for aggravated second degree battery.
In her trial testimony, the victim was unsure whether she was hit with the paint can or the bottle first. The defendant also points out that the paint can found at the scene was not tested for fingerprints. In addition, the can was partially open and the defendant claims that, if he hit the victim with it, she would have had paint on her body. The defendant further argues that the liquor bottle was never tested for fingerprints or to determine whether the substance observed on the bottle was the victim's blood.
The record reflects that there was sufficient evidence for a trier of fact to find that a dangerous weapon was used in committing the battery on B.B. The victim testified that she was struck with a paint can and a bottle. The fact that she could not recall which object she was struck with first is irrelevant. She clearly stated that she was struck with at least one of these objects. A paint can, containing paint, and a glass liquor bottle smeared with what appeared to be fresh blood were found at the crime scene during the police investigation. The defendant admitted that he swung the paint can at B.B. with such force that it was likely to cause death or great bodily harm, had it made contact. Although the defendant denied striking B.B. with any objects, it is obvious that the jury credited the testimony of the victim over that of the defendant on this factual point. Looking at the evidence in the light most favorable to the prosecution, a rational juror could reasonably find that B.B. was struck with the paint can and the bottle, and that the objects were used in a manner calculated or likely to cause death or great bodily harm. The defendant's argument to the contrary is without merit.

EXCESSIVE SENTENCE
The defendant contends that his sentence to 40 years at hard labor, without benefit of parole, probation, or suspension of sentence, for his conviction for second degree kidnapping, is excessive.[4] This argument is without merit.

*655 Law
When, as in the instant case, a defendant's motion for reconsideration urges simply that his sentence is excessive, he is relegated to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Taylor, 41,898 (La.App. 2d Cir.4/4/07), 954 So.2d 804. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. Taylor, supra.
A trial court has broad discretion to sentence. Absent a showing of manifest abuse of that discretion, this court may not set aside a sentence as excessive. State v. Guzman, XXXX-XXXX and XXXX-XXXX (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App. 2d Cir.5/12/04), 873 So.2d 939.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Taylor, supra.
The penalty for second degree kidnapping is set forth in La. R.S. 14:44.1(C):
Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.

Discussion
In the present case, the trial court imposed the maximum sentence on the defendant for second degree kidnapping. The defendant contends that he is not the worst offender and his conduct does not represent the worst offense. Therefore, according to the defendant, the imposition of a maximum sentence is excessive.
The defendant was convicted of a violent crime and the victim suffered life-threatening injuries. The nature of the beating was particularly savage and cruel. The trial court observed that the defendant was 40 years old at the time of this offense.
The trial court noted at the sentencing hearing that the defendant has a long and sordid criminal history. According to the trial court, the city court minutes concerning the defendant's numerous court appearances and misdemeanor convictions encompassed 46 pages. Although the defendant has only one prior felony conviction for conspiracy to distribute a schedule II controlled dangerous substance, he has been arrested at least 33 times for numerous other offenses, many of them felony charges which were reduced. The trial judge listed a litany of misdemeanor convictions, including four charges of resisting arrest, six charges of battery (including one on a police officer), a concealed weapons charge, three thefts, four charges of disturbing the peace, eight charges of entering and remaining after being forbidden, plus charges of assault, property damage, and trespass. The judge noted that in several reports the defendant was listed as having the nickname "Crackhead Rodney." With respect to the defendant's disciplinary record at the Caddo Correctional Center, the trial court noted 59 write-ups in the approximately two years since his arrest on the present charge. Many of these offenses involved batteries against staff, assault, *656 and fighting. All of these matters were properly considered by the trial court in concluding that the defendant was deserving of the maximum or near-maximum sentences.[5] Due to the nature of the offenses and the defendant's criminal history, the trial court found that the defendant was in need of lengthy correctional treatment.
The trial court also noted that the defendant received great leniency from the jury by being convicted of the lesser crime of second degree kidnapping instead of the crime charged, aggravated kidnapping. Aggravated kidnapping would have resulted in the mandatory sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:44. The trial court indicated that the facts would have supported a rape charge.
Based upon this record and particularly in light of the defendant's violent nature, this sentence for second degree battery does not shock the sense of justice and was tailored to the offender and the offense.[6] The trial court did not abuse its discretion. This assignment is therefore without merit.

CONCLUSION
For the reasons stated above, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The victim's initials are used because of victim confidentiality requirements applicable to the instant case under La. R.S. 46:1844(W).
[2] DNA testing confirmed that the DNA profile obtained from the samples taken from the victim's rape kit was consistent with the defendant's DNA profile.
[3] False imprisonment is defined as the intentional confinement or detention of another without consent and without proper legal authority. La. R.S. 14:46. Courts have found that the words "imprisoning" (as used in the second degree kidnapping statute) and "confinement" (as used in the false imprisonment statute) are synonymous. See State v. Arbuthnot, 625 So.2d 1377 (La.App. 1st Cir.1993).
[4] In his assignments of error the defendant urges that, "The sentence of Mr. Pamilton by the trial court was constitutionally excessive." In his brief, the defendant has made no argument regarding excessiveness of the sentence for aggravated second degree battery. He contends only that the trial court erred in imposing an excessive sentence for his conviction for second degree kidnapping.
[5] In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Russell, 40,526 (La.App. 2d Cir. 1/27/05), 920 So.2d 866, writ denied, XXXX-XXXX (La.9/29/06), 937 So.2d 851; State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Jones, 31,569 (La. App. 2d Cir. 12/9/98), 724 So.2d 810; State v. Anderson, 30,060 (La.App. 2d Cir. 10/29/97), 702 So.2d 40. Absent a defendant's assertion that he was falsely or mistakenly charged with an offense, the sentencing court may also consider a dismissed charge as part of the defendant's criminal history, even when the dismissal forms part of the plea agreement. State v. Cook, 466 So.2d 40 (La.App. 2d Cir. 1985); State v. Daley, 459 So.2d 66 (La.App. 2d Cir. 1984), writ denied, 462 So.2d 1264 (La.1985).
[6] Even though the defendant has not argued that his sentence to 15 years at hard labor on the aggravated second degree battery conviction is excessive, we find that the sentence was not an abuse of the trial court's sentencing discretion.