LOLLEY, J.
|! This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Stanley Mangham, pled guilty to theft of assets of an aged or disabled person, in violation of La. R.S. 14:67.21. Mangham was sentenced to serve eight years’ imprisonment at hard labor, consecutive to any other sentence. He was also ordered to pay court costs and to make restitution to the victims. Mangham now appeals his sentence, which we affirm for the following reasons.
Facts
From December 2008 through early 2011, Mangham took over $200,000.00, from his in-laws, William and Wanda Beach, both individuals over the age of 60. He told the couple that he was an agent for Primerica Financial Services, and as such, he could invest their funds for a *495 substantial return. However, Mangham did not invest the couple’s money. Instead, Mangham deposited the money into a bank account for his flooring business and spent all of it for his own use-mostly on trips, restaurants, and shopping. After becoming suspicious, the Beaches called the police. Ultimately, Mangham was arrested and charged with theft of assets from an aged or disabled person, in violation of La. R.S. 14:67.21.
Shortly before he was to be tried, Mang-ham appeared before the trial court to plead guilty as charged. The trial court advised Mangham that if he pled guilty there was no agreement regarding sentencing and that probation was unlikely based on the facts of the case. The trial court explained to Mangham the rights he was giving up by pleading guilty, and he acknowledged his understanding. Based on that information before him, IsMangham advised the trial court that he had intended to invest the money but “things just fell out the wrong way. I misunderstood what I could do and I mean I messed up, I had a big error in judgment.” He said he worked for Primerica and intended on investing the money, but then discovered that investing the money would cost him money. The State advised the trial court that none of the money that Mangham stole from his in-laws remains in the bank account in which he deposited it. Mangham admitted that he intended to take all of the money for his personal use; he did spend all of it, and none of the money remains. Mangham admitted that he was guilty of the crime charged, and the trial court accepted his guilty plea.
Subsequently, Mangham appeared for a sentencing hearing, at which several witnesses testified. Among those witnesses were: the investigating officer, Detective Bobby Herring, of the Caddo Parish Sheriffs Office; Mangham’s victims, Wanda and William Beach; William’s brother, Charles Beach; and, Gary Byrd, pastor at Haughton Baptist Temple. After considering the testimony of the stated witnesses, the trial court sentenced Mangham to serve eight years at hard labor, with credit for any time already served. The trial court stated, “I would have given him the maximum possible sentence of ten years except for the fact that he pled guilty. I’m giving him the benefit under law for ultimately admitting his guilt, although he waltzed around it quite a bit during his April 12th guilty plea.” The trial court also ordered that Mangham make restitution pursuant to a periodic payment plan consistent with his financial ability, as required by La. R.S. 1⅞14:67.21. The sentence was imposed to run consecutively to any other sentence that may be imposed at any later time.
In June 2012, Mangham’s counsel filed a motion to reconsider sentence and argued that some of the aggravating factors listed by the trial court at sentencing were improper. The trial court denied the motion on grounds that Mangham devastated his family because he had taken the life savings of his in-laws, who were senior citizens; he intentionally deceived them over the course of a number of years; and he was disingenuous with the trial court during his guilty plea and had shown no remorse. In denying the motion, the trial court also noted that Mangham had actually committed numerous counts, which were cumulated in one bill of information.[1]
This appeal by Mangham ensued.
*496 Discussion
In his only assignment of error, Mangham submits that his eight-year sentence is excessive for a first time felony offender, who pled guilty as charged, particularly when restitution was also ordered. Specifically, he argues that the sentence imposed is excessive and punitive and does not satisfy the goals of rehabilitation and enabling him to make significant restitution to the victims. He asserts that the goals of punishment can be met with a less harsh sentence in light of his plan to make restitution to the victims. In light of the egregious nature of this crime, we disagree.
ULouisiana R.S. 14:67.21 states in pertinent part that theft of the assets of an aged or disabled person and the corresponding sentence is:
B. (3) The intentional use, consumption, conversion, management, or appropriation of an aged person’s or disabled person’s funds, assets, or property through the execution or attempted execution of a fraudulent or deceitful scheme designed to benefit a person other than the aged person or disabled person.
C. (1) Whoever commits the crime of theft of the assets of an aged person or disabled person when the value of the theft equals one thousand five hundred dollars or more may be imprisoned, with or without hard labor, for not more than ten years and shall be fined not more than three thousand dollars, or both.
[[Image here]]
E. In addition to all other penalties, a person convicted under this Section shall be ordered to make full restitution to the victim and any other person who has suffered a financial loss as a result of the offense. If a person ordered to make restitution pursuant to this Section is found to be indigent and therefore unable to make restitution in full at the time of conviction, the court shall order a periodic payment plan consistent with the person’s financial ability. (Emphasis added.)
The trial court has wide discretion in imposing sentence within minimum and maximum limits allowed by the statute, therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Young, 46,575 (La.App.2d Cir.09/21/11), 73 So.3d 473, writ denied, 2011-2304 (La.03/09/12), 84 So.3d 550. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case. State v. Cook, 95-2784 (La.05/31/96), 674 So.2d 957, cert, denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). The reviewing court does not determine whether another | ^sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La. App.2d Cir.09/21/11), 73 So.3d 1021, writ denied, 2011-2304 (La.03/09/12), 84 So.3d 551.
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La. App.2d Cir.11/02/11), 77 So.3d 1052.
A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance; the trial court need only articulate a factual basis for the sentence. State v. Cunningham, 46,664 (La.App.2d Cir.11/02/11), 77 So.3d 477. The defendant’s personal *497 history and criminal record, as well as the seriousness of the offense, are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Moton, 46,-607 (La.App.2d Cir.09/21/11), 78 So.3d 508, writ denied, 2011-2288 (La.03/30/12), 85 So.3d 113. In selecting a proper sentence, a trial judge is not limited to considering only a defendant’s prior convictions, but may properly review all prior criminal activity. State v. Pamilton, 43,112 (La. App.2d Cir.03/19/08), 979 So.2d 648, writ denied, 2008-1381 (La.02/13/09), 999 So.2d 1145. The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 1994-0217 (La.06/03/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed |fithe other offenses. State v. Doyle, 43,438 (La.App.2d Cir.08/13/08), 989 So.2d 864.
Maximum sentences are generally reserved for the worst offenses and offenders. State v. Taylor, 41,898 (La.App.2d Cir.04/04/07), 954 So.2d 804. Where there is a mandatory sentence, there is no need for the trial court to justify, under Article 894.1, a sentence it is legally required to impose. State v. Burd, 40,480 (La.App.2d Cir.01/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/09/06), 941 So.2d 35; State v. Koon, 31,177 (La.App. 2d Cir.02/24/99), 730 So.2d 503.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict pain and suffering. State v. Fatheree, 46,686 (La.App.2d Cir. 11/02/11), 77 So.3d 1047. Whether the defendant’s imposed sentence is constitutionally excessive depends on the facts and circumstances of the case and the defendant’s background. State v. Robinson, 40,983 (La.App.2d Cir.01/24/07), 948 So.2d 379. The court considers (1) if the punishment is so grossly out of proportion to the seriousness of the offense and the harm done to society that it shocks the sense of justice; and (2) if the punishment is nothing more than a purposeless and needless infliction of pain and suffering. Id.
In this case, Mangham’s imposed sentence of eight years at hard labor is within the sentencing range provided by the statute. Likewise, the statute specifically provides for full restitution to the victim, in addition to any 17other penalties. The text of the statute shows that a person, indigent or otherwise, who commits this crime is intended to serve time in prison, pay a fine, or both, and must make full restitution to the victim. Mangham’s assertion that he should serve a lesser sentence because he was ordered to pay restitution is not supported by the statute, which mandates that he must serve the penalty for the crime and pay back the victims, not one or the other.
At the sentencing hearing, the trial court provided a comprehensive factual basis for the sentence and carefully detailed its consideration of the sentencing guidelines under La. C. Cr. P. art. 894.1, including both aggravating and mitigating factors. It noted the following:
• At some point in time, Mangham sold insurance for Primerica. However, he told his in-laws, senior citizens in bad health, that if they allowed him to invest their savings in Primerica, they could triple their money and live off the interest. Mangham was not even authorized to sell any sort of investment product with Primerica;
*498 • Having known Mangham for 39 years by his marriage to their daughter, William and Wanda Beach trusted him to invest their life savings, $190,000.00, for them in Primerica;
• Additionally, they “loaned” Mangham $18,900.00 to pay back Charles Mang-ham after he promised to repay the loan in three or four days;
Is* Mangham never invested any of the couple’s money and spent all of it. Nor did he repay the loan. The victims, William and Wanda Beach, sustained a loss of over $200,000.00; and
• In addition to taking money from William and Wanda Beach, and Charles Beach, it appears that Mangham also took approximately $10,000.00 from the congregation at Haughton Baptist Temple, in exchange for a carpet renovation that he never performed. That money has not been returned.
The trial court stated:
These victims were vulnerable, Mr. Mangham knew it. He was trusted by them and he violated their trust, really in the worse (sic) sort of way. It’s really a shocking event to me to be able to read what I’ve read in the record and to hear the testimony of these sweet victims.
He deserves nothing in terms of leniency, he deserved no promises from the court.
On the eve of trial by jury, that is, on the days just before this case was to be called for trial by jury, he pled guilty and he wanted to avail himself of the benefits of pleading guilty yet at the same time he played fast and loose with me during the guilty plea about his intent.
The trial court noted that the victims were over age 65 and in ill health, and were both devastated that all of their savings was gone after trusting their son-in-law to invest it for them.
After consideration of the sentencing guidelines in La. C. Cr. P. art. 894.1, the trial court then found that there was an undue risk that during a period of suspended sentence or probation the defendant would commit another crime, because Mangham preyed on persons who trusted him and who were vulnerable, repeatedly and for an extended period of time. The [ atrial court further noted that Mangham was in need of correctional treatment in a custodial environment best provided by the department of corrections, and that any lesser sentence than the one imposed would deprecate the seriousness of the crime. Finally, the trial court opined that Mangham manifested deliberate cruelty to his victims during the years that he committed this crime, knowing that his in-laws were particularly vulnerable due to their advanced age and William Beach’s heart problems.
Aggravating factors noted by the trial court included that Mangham used his position in a financial entity to facilitate the commission of a crime and that he committed a major economic offense to the victims, who due to age and bad health, are unable to work again. According to the trial court: “This defendant can’t possibly repay them during their lives and these victims because of their senior status they’re unable to enjoy their sunset years.... The whole thing is just incredibly shameful and worse than I even thought, way worse than I even thought.”
The only mitigating factors that the trial court found for consideration were the fact that Mangham pled guilty and that he had no prior felony convictions. However, the trial court could not ignore the disgraceful nature of the crime, noting:
This is a bad situation. I don’t know how else to say it. This sort of theft *499 perpetrated in this manner is extremely offensive and I’m having a hard time even understanding how anybody could even sleep at night, much less sleep at night for several years, while doing it. All of that just boggles my mind.
We agree. Mangham defrauded his elderly, sick in-laws out of their savings over a period of three years. Then he moved on to his father-injjaw’sjo elderly brother. When those wells ran dry, he moved on to the local Baptist church, where it appears he continued his con. Mangham admits that he took William and Wanda Beach’s money and lied to them, but persists in maintaining that he intended to invest the money and intended to pay it back. These assertions ring hollow as there is no evidence that he ever intended anything but to steal this elderly couple’s life savings for his own personal use.
Knowing he was not authorized, he conned his in-laws into signing contracts to invest their savings. Every single check was deposited, not into an account with Primerica, but into his flooring business bank account. Mangham’s bank records show a pattern: he took their money, deposited it into his account, and then systematically spent it, day after day, until it was gone. When he was out of money and the bank charges began piling up, he would get another check from his in-laws, deposit it into his flooring business account, and spend every last penny. This pattern continued for three years until the bank account ran insolvent and the bank closed the account. For three years, Mangham dined, traveled and shopped at his leisure on the life savings of his in-laws, as he continued to tell them the money was invested. Although he has claimed that he meant to pay it back, his own actions say otherwise. He made no effort whatsoever to confess his wrongdoing to his family or to even mention paying the money back until he faced criminal charges. In fact, he repeatedly took large amounts of money from them under false pretense. Only when faced with Inimprisonment did Mangham suggest that he would work to pay back ■ the money.
Mangham preyed upon the trust of his own family members to rob them of their financial security. His theft has sentenced this poor elderly couple to live out the last years of their lives struggling in dire financial conditions. Given the large amount of money stolen and the circumstances of Mangham’s crimes, the sentence imposed clearly does not shock the sense of justice. In fact, a lessening of his sentence would serve to shock the sense of justice, considering the heinous crime committed. There is no showing that the trial court abused its discretion in sentencing; therefore, this argument is without merit.
Conclusion
For the foregoing reasons, the conviction and sentence of Stanley E. Mangham are affirmed.
AFFIRMED.

. Mangham’s pro se motion to reconsider sentence was filed in August 2012. In that motion, Mangham argued that he had been an upstanding citizen for 49 years, he was a first offender with no prior arrests, and he planned to make restitution. He asked the trial court to consider suspending part of his sentence so that he could return to society *496 and make restitution. To date, it appears there has been no disposition of that motion.